UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

| | |
|---|---|
| HEWLETT PACKARD ENTERPRISE COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ETK FINANCIAL CORPORATION, a Florida corporation,<br><br>Defendant. | **COMPLAINT FOR DAMAGES FOR:**<br><br>**1. BREACH OF ORAL CONTRACT;**<br>**2. BREACH OF WRITTEN CONTRACT;**<br>**3. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**DEMAND FOR TRIAL BY JURY** |

**COMPLAINT**

Plaintiff HEWLETT PACKARD ENTERPRISE COMPANY ("HPE" or "Plaintiff") hereby brings this action against Defendant ETK FINANCIAL CORPORATION ("ETK" or "Defendant"), and alleges as follows:

## I.   INTRODUCTION

1. During the period from approximately January through October 2018, ETK entered into oral and written contracts with HPE in which HPE granted $1,046,860 worth of discounts in reliance upon ETK's warranty that it would use the products purchased from HPE for its own business and not resell them. Contrary to its representation, however, ETK resold those products to Dynamic Noble Services, LLC ("DNS"), a company that resells HPE products and in competition with HPE and HPE's authorized sales partners.

## II.   PARTIES

2. HPE is, and at all times mentioned herein was, a Delaware corporation. Since the end of 2020, its principal place of business has been located at 1701 East Mossy Oaks Road,

1

Spring, Texas 77389.  Thus, at the time of the commencement of this action, HPE is a citizen of the States of Delaware and Texas for purposes of diversity jurisdiction.  Prior to that, HPE's principal places of business were in Houston, Texas, San Jose, California, and Palo Alto, California.

3. Defendant ETK is, and at all times mentioned herein was, a Florida corporation with its principal place of business in Broward County, Florida.  At all times relevant to this complaint, ETK's principal place of business was located in Florida.  Thus, for purposes of diversity jurisdiction, ETK is a citizen of the State of Florida.

### III. JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because (1) Plaintiff requests, as shown in further detail below, relief in an amount far in excess of $75,000, exclusive of interest and costs, and (2) there is complete diversity of citizenship between Plaintiff and Defendant.

5. This Court has personal jurisdiction over ETK because it resides within this judicial district and is a Florida corporation with its principal place of business in Broward County, Florida. Plaintiff further alleges that its claims arise from Defendant's contacts with this forum as, on information and belief, Defendant has engaged in business activities in this district, and directed business activities at and in this district.

6. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1400(a), because Defendant "may be found" here.  Venue is also proper in this district, pursuant to 28 U.S.C. § 1391, because Defendant's principal place of business is in this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## IV.     FACTUAL ALLEGATIONS

### A.     HPE Business and History

7.      Hewlett-Packard Company ("HPQ") was founded in 1939 by engineers David Packard and Bill Hewlett, who began business by designing and building electronic test equipment from a garage in Palo Alto, California. HPQ became an innovator in its field, developing technologies and inventing new products, growing to become one of the world's largest information technology companies. HPQ specialized in developing and manufacturing personal computers and printers, as well as enterprise hardware products and services, including support services and enterprise software. In late 2015, HPQ split into HP Inc. (specializing in manufacturing personal computers, printers, and printer cartridges) and Hewlett Packard Enterprise Company ("HPE") (specializing in manufacturing enterprise IT hardware, as well as the creation and distribution of enterprise software and support services).

8.      HPE is a multinational enterprise company that delivers industry leading, high-quality information and technology products, consulting, and support services to its large and diverse customer base including governments, large enterprises, and small to medium-sized businesses. Among other areas, HPE's business includes telecommunications networking hardware products and solutions, small to enterprise level data storage products and solutions, data center configuration and installation products and services, as well as various enterprise and information and technology management software solutions, including enterprise security software and big data analytics software, to name a few.

### B.     HPE Channel Sales Structure

9.      HPE uses a channel distribution model to sell products to end customers. That channel structure includes large distributors that purchase HPE products directly from HPE and stock them in regional warehouses.  It also includes companies that become HPE authorized

Partners ("Partners").  A company that HPE accepts as a Partner is required, pursuant to a formal written agreement, to purchase HPE products only from authorized distributors, and to sell HPE products only to end customers.  An HPE Partner enjoys many benefits that others do not, including the ability to buy HPE products at standard discounts from HPE authorized distributors.

10. When the standard discount pricing available to the Partner is not competitive enough—such as when the Partner needs better pricing in order to beat out a bid by another company to win the business—the Partner may request that HPE grant a higher discount under the "Big Deal" program.  HPE will grant Big Deal discounts on sales only for sales to bona fide end users, who can demonstrate that a sufficient business case exists to justify granting those larger discounts.  Partners who request Big Deal discounts from HPE must provide proof that the products will be used by the identified end customer and that the requested extra discounts are justified.  They must also promise and warrant that the products are not being provided for resale to anyone other than the designated end user.

11. HPE has developed policies and internal controls to uncover and stop frauds that exploit its Big Deal discounts, as described below. Those various policies and controls have been refined over the years, as HPE learned about the ways that fraud is conducted against it, and what methods work in preventing such fraud.

C. **Facts Regarding ETK's Breaches of Oral Contracts**

12. Beginning in or about January 2018 and continuing through May 2018, ETK entered into a series of agreements with HPE wherein HPE approved Big Deal discounts on products that HPE sells under the brand name "Aruba."  HPE granted Big Deal discounts based upon ETK's agreement that: ETK would use those Aruba products solely for the purpose of setting up financial centers for its own customers, that ETK would be providing financing to its

customers for the purchase of these products, and that these products would not be resold for any other purpose. Relying upon ETK's agreement to the restrictions on how those Aruba products could be used, HPE allowed its Partner, Myriad Supply, LLC ("Myriad"), to provide ETK with the highly discounted products, under Big Deal numbers: 95535231, 95669661, 95718352, and 95770013 (the "Myriad Big Deals"). These discounts reflect lost revenue by HPE.

13. ETK breached its obligations under each of the Myriad Big Deals in that ETK did not use the discounted products in projects for ETK customers and for which ETK was providing financing. Instead, ETK resold the products to DNS with knowledge that DNS would then resell those products on the open market to others, and in competition with HPE. DNS provided ETK with 50% of the profits it earned from its resale of these products.

14. HPE was harmed by ETK's breach of the Big Deal Agreements. It provided ETK with $259,854.57 in Big Deal discounts related to the Myriad Big Deals that it would never have provided absent ETK's promise to use the Aruba products in the manner it described and its promise to refrain from offering the specially discounted products for resale. HPE lost profits in an amount at least equal to the amount of the Big Deal discounts that ETK obtained.

    **D.**     <u>**Facts Regarding ETK's Breaches of Written Contract With HPE**</u>

15. On or about April 30, 2018, ETK signed a written contract to itself become an HPE Partner, which allowed it to apply directly to HPE for Big Deal discounts. On becoming a Partner, ETK enjoyed privileges and benefits granted by HPE in exchange for which they were bound to comply with certain obligations that are described in a contract, entitled the "HPE U.S. Partner Agreement" ("Partner Agreement"). Among other things, the Partner Agreement incorporates the terms and obligations described in the "HPE Partner Code of Conduct" ("PCOC") and in the "HPE U.S. Partner Roles and Responsibilities Addendum" ("Partner

Responsibilities"). Upon becoming a Partner, ETK agreed to comply with all contractual obligations, including:

      a.      With minor exception not applicable here, Partners may sell HPE products only to a valid "Customer," which is defined as an entity that purchases the products for its own internal use only. (Partner Agreement, ¶¶ 1.c, 2.d); Partner Responsibilities, ¶ 1.b) Thus, Partners are prohibited from selling HPE products to an entity that would be offering those products for resale.

      b.      Partners may not seek or accept any compensation that may violate contractual obligations. (Partner Agreement, ¶ 16.c) A breach of this section is deemed a material breach of the Partner Agreement. (*Id.*)

      c.      Where a Partner materially breaches the Partner Agreement, it is liable for: (i) "refund[ing] or forfeit[ing] any discounts or program payments paid or accrued during the scope of the breach period;" (ii) reimbursing HPE for "all reasonable outside counsel fees associated with enforcing [the Partner Agreement];" and, (iii) paying HPE for "all liabilities, losses, costs and damages associated with the breach." (Partner Agreement, ¶ 15.d)

16.      Between about June 2018 and October 2018, and while a Partner, ETK applied for and obtained special discounts for Aruba products under nine Big Deals, numbers 95852794, 95878992, 95909647, 95959654, 95969920, 95983648, 96025157, 96105833, and 96227309. HPE granted ETK $366,782 in standard discounts that are normally available to HPE Partners. HPE also granted ETK an additional $420,213 of Big Deal discounts in reliance upon ETK's promise that the products would be used by ETK in projects that it was financing, and in accordance with the terms of the Partner Agreement and of the Big Deal program.

17. Here, again, ETK resold all of the above-described products to DNS with knowledge that DNS would then resell those products on the open market to others, and in competition with HPE. DNS provided ETK with 50% of the profits it earned from its resale of these products. In addition to violating the terms of the Big Deal program, ETK also breached its obligations under the Partner Agreement by: selling products to DNS for resale; selling HPE products to other than a valid "Customer"; and by accepting compensation from DNS that was associated with ETK's violation of its contractual obligations.

## V. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
(Breach of Oral Contract)

18. Plaintiff incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

19. Defendant entered into a binding oral contract with HPE for the Myriad Big Deals in which Defendant obtained valuable discounts on HPE products in exchange for Defendant's promise to use those products only in the manner specified, which was a material term of that contract. HPE approved the special "Big Deal" discounts for products to be sold to Defendant, in reliance upon Defendant's promise to use the products itself and not resell them.

20. HPE performed all or substantially all of its obligations under the oral contracts with ETK, binding ETK to perform according to its promises under the oral contracts.

21. Defendant breached the oral contracts by reselling the specially discounted products in a manner contrary to how Defendant promised those products would be used. This constituted a material breach of the oral contracts.

22. HPE suffered $259,855 in damages as a direct and proximate result of Defendant's wrongful conduct. Defendant's breach was a substantial factor in causing HPE to suffer this harm.

## SECOND CLAIM FOR RELIEF
### (Breach of Written Contract)

23. Plaintiff incorporates paragraphs 1 through 17 of this Complaint as if fully set forth herein.

24. ETK entered into a binding written contract with HPE in which HPE granted ETK the privileges and benefits enjoyed by HPE Partners. Among these privileges and benefits, ETK was granted the ability to purchase discounted products directly from HPE's authorized distribution channel, and to apply directly to HPE for Big Deal discounts. In exchange, ETK agreed that it would abide by certain conditions regarding its resale of HPE products, among other things. HPE relied upon ETK's agreement to abide by the resale restrictions in agreeing to grant the Partner discounts and the Big Deal discounts that it agreed to give ETK.

25. HPE performed all or substantially all of its obligations under the written contract with ETK, binding ETK to perform according to its obligations under that contract.

26. ETK breached the contract by reselling the products it purchased at discount from HPE in a manner that was contrary to how Defendant promised those products would be used. This constituted a material breach of the written contract.

27. HPE suffered $786,996 in damages as a direct and proximate result of ETK's wrongful conduct. Defendant's breach was a substantial factor in causing HPE to suffer this harm. Further, according to the terms of the contract, ETK is liable to HPE for the full amount of all discounts that HPE granted, which discounts total $786,996.

## THIRD CLAIM FOR RELIEF
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

28.     Plaintiff incorporates paragraphs 1 through 17 of this Complaint as if fully set forth herein.

29.     Pursuant to valid and binding oral and written contracts, ETK owed to HPE various duties regarding how discounted HPE products may be resold by ETK.  HPE performed all, or substantially all of its obligations to ETK under those contracts.  ETK owed HPE a duty of good faith and fair dealing with respect to its obligations under the oral and written contracts.

30.     ETK resold the discounted products to end users other than those that were specified for the Big Deal discounts.  It also sold the discounted products to DNS for resale to others.  By doing so, ETK did not act fairly and in good faith.  These actions prevented HPE from receiving the benefits of the contract.

31.     HPE suffered $786,996 in damages as a direct and proximate result of ETK's conduct.

## VI.     PRAYER FOR RELIEF

**WHEREFORE,** HPE demands judgment against ETK as follows:

a.      Awarding HPE damages, including compensatory damages and lost profits, for all of ETK's breaches of contracts, oral and written, and misrepresentations;

b.      Awarding HPE pre- and post-judgment interest, as allowable by law;

c.      Awarding HPE its attorney's fees, costs and disbursements associated with HPE enforcing its rights under the Partner Agreement;

d.      Compensatory damages and lost profits for all liabilities, losses, costs and damages that HPE suffered and that are associated with ETK's breach of the Partner Agreement; and

   e. Granting any such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a trial by a jury on all issues herein so triable.

DATED: May 11, 2022

       Respectfully submitted:

       **HOMER BONNER**
       1200 Four Seasons Tower
       1441 Brickell Avenue
       Miami, FL 33131
       Tel: (305) 350-5100

        */s/ Gregory J. Trask*
       By: _____
        Peter W. Homer
        Florida Bar No. 291250
        Email: phomer@homerbonner.com
        Gregory J. Trask
        Florida Bar No. 0055883
        Email: gtrask@homerbonner.com

       *Co-Counsel for Plaintiff*

       **SIDEMAN & BANCROFT LLP**
       Richard J. Nelson (pro hac vice to be filed)
       Email: rnelson@sideman.com
       Louis P. Feuchtbaum (pro hac vice to be filed)
       Email: lfeuchtbaum@sideman.com
       One Embarcadero Center
       Twenty-Second Floor
       San Francisco, CA 94111
       Tel: (415) 392-1960

       *Co-Counsel for Plaintiff*